Robert Cagle brought an action for breach of contract against Roy Buckner Chevrolet, Inc. A jury fixed his damages at $11,522.17.
In November, 1977, Cagle went to Roy Buckner Chevrolet to discuss the purchase of a 1978 Chevrolet Corvette, known as a "Limited Edition Corvette CP". General Motors Corporation produced only a limited number of these automobiles, which were referred to as "Indy Vettes" because one or more of them were used as pace cars at Indianapolis.
Cagle talked to the assistant used car manager, who referred him to Joel Kelly, the new car sales manager. The assistant used car manager partially filled out a "buyers order" form which was then presented to Kelly. After the initial discussion, Kelly agreed to sell Cagle an "Indy Vette" at list price. Kelly wrote "list price" and signed his name on the "buyers order". His signature did not appear in the space provided for the signature of an officer of Roy Buckner Chevrolet, but rather was signed in the middle of the page. The form was only partially completed at the time of Kelly's signature. Cagle also signed the order form and gave Kelly a $500 deposit. When the form was signed, Roy Buckner Chevrolet did not have an "Indy Vette" in its possession, but later received two such automobiles.
Roy Buckner Chevrolet notified Cagle that it would not sell him one of these cars and attempted to return his deposit. Cagle refused the attempted return of the deposit and brought suit.
There is no disagreement about damages, as the market value of this limited edition "Indy Vette" was substantially higher than the manufacturer's suggested list or sticker price. It is also conceded that Kelly had the authority to bind and contract for the corporation.
The appellant argues several issues for reversal, however. The principal one is whether a valid contract was consummated. Appellant asserts that there was never a meeting of the minds and that the memorandum was insufficient under Code 1975, §7-2-201 (1). That section states:
 "(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon, but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing."
The appellant claims that the "buyers order" was only partially complete and several important spaces were left blank, and therefore, that it does not comply with § 7-2-201 (1). The "buyers order" is characterized by the appellant as nothing more than an agreement to enter into a future agreement. We do not agree.
Kelly testified as follows:
 "Q And you recall the situation and the dealings with Mr. Cagle on that occasion?
"A Yes, sir.
 "Q Did you offer to sell that car to Mr. Cagle for list price?
"A Yes, sir.
"Q Did he accept that offer. *Page 880 
"A Yes.
 "Q Did he make a down payment of $500 to Roy Buckner Chevrolet?
"A Yes, sir.
"Q Was he given a receipt for that down payment?
"A Yes, sir.
 "Q Was he told that when the car came in, the first Indy `Vette would be his?
"A Yes, sir.
 "Q And when the car came in was he told it will not be sold to [sic] you?
"A Yes."
It is undisputed that Kelly was acting in his capacity as sales manager and was an agent for Roy Buckner Chevrolet, with the authority to contract. In light of Kelly's testimony, it is obvious that he intended to bind the parties immediately and not merely to agree at a future date. The question then becomes whether the "buyers order" form is a sufficient memorandum under the statute of frauds contained in § 7-2-201 (1).
It is true that the order form is only partially complete and is not signed in the designated place by an officer of Roy Buckner Chevrolet. However, open terms in a contract are not conclusive on the indefiniteness of the contract.
 "(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.
 "(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.
 "(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." (Emphasis added.)
Code 1975, § 7-2-204.
The Official Comment to § 7-2-204 adds:
 "If the parties intend to enter into a binding agreement, this subsection recognizes that agreement as valid in law, despite missing terms, if there is any reasonably certain basis for granting a remedy. The test is not certainty as to what the parties were to do nor as to the exact amount of damages due the plaintiff. Nor is the fact that one or more terms are left to be agreed upon enough of itself to defeat an otherwise adequate agreement. Rather, commercial standards on the point of "indefiniteness" are intended to be applied, this Act making provision elsewhere for missing terms needed for performance, open price, remedies and the like.
 "The more terms the parties leave open, the less likely it is that they have intended to conclude a binding agreement, but their actions may be frequently conclusive on the matter despite the omissions."
The form is signed by both parties, and states the quantity and price of the car. Even though the price is stated to be the list price, we feel this is sufficiently definite. Code 1975, §7-2-305, provides that parties may conclude a contract even though the price is not settled. In agreeing to let the price be fixed at the amount stated on the list, both parties were bound by the obligation of good faith contained in Code 1975, §7-1-203.
The appellant also contends no specific car can be identified from the "buyers order". Both Kelly and Cagle testified that it was understood that the first "Indy Vette" that came in would be the subject of their contract. We think this expresses the intent of the parties as to which car would be sold even though a specific car could not have been identified at the time of the making of the contract. Again, the obligation of good faith (§ 7-1-203) would apply.
The last claim of error concerns the rejection of certain evidence. The appellant attempted to introduce several other "buyers order" forms executed by Kelly in an effort to show that they were signed by Kelly in a different place on the form. These forms were offered to show that Kelly did not intend to enter into a contract *Page 881 
because if he had, he would have signed the form in question in the normal place rather than on the middle of the page. The appellant argues that, when relevant, one's custom or habit may be shown as an exception to the hearsay rule. We agree with the general statement of the rule, but conclude that the trial court did not erroneously reject the offer. As previously indicated, Kelly's testimony was to the effect that he intended to contract. There was no offer to impeach the employee's testimony. Moreover, the order forms tendered were for automobiles known and identifiable, whereas the "Indy Vette" transaction was admittedly different and unusual and the exact nomenclature of the "Indy Vette" was unknown. Additionally, appellee counters appellant's argument by saying that appellant should not be allowed to pick and choose the order forms which show a different method of execution, but rather should offer all such forms. We will not decide this question, however. We are of the opinion that under the circumstances the trial judge did not abuse his discretion in rejecting the evidence.
Accordingly, the judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.